## CLARENCE A. FIFER *vs.* THE CLEARFIELD AND CAMBRIA COAL AND COKE COMPANY.

*Plea—Admission of the Execution of Contract—Proof of Agency—Contracts—Mistake as to Identity of the Person.*

A declaration alleged that the defendant company made a written contract, set out in the declaration, by X, its duly authorized agent. The defendant pleaded the general issue and that the alleged contract was procured by the plaintiff's fraud. Code, Art. 75, sec. 23, provides that when the execution of any written instrument filed in the cause is alleged in the pleadings, the same shall be taken as admitted, unless denied by the next succeeding pleading of the opposite party. *Held*, that the defendant's failure to deny by his plea the execution of the contract relieved the plaintiff from the necessity of proving it, but did not admit that X was defendant's agent authorized to make the contract.

When the defendant in an action on a written contract alleged to have been made by his agent pleaded the general issue pleas and for a third plea that the alleged contract was procured by the fraud of the plaintiff, this third plea does not estop the defendant from denying the authority of the agent.

In an action against a principal on a contract alleged to have been made by his agent, evidence of the declarations and acts of the agent is not admissible against the defendant until there has been some proof *aliunde* to establish the fact of the agency.

The evidence in this case examined and held to be legally sufficient to be submitted to the jury to prove that a certain party was defendant's agent and as such authorized to make the contract sued upon.

A man who carried on business under the name of the Cambria Coal Company made a contract in that name with the defendant, who thought that he was dealing with a corporation having a capital stock, when in reality there was no such corporation. Upon learning this fact defendant repudiated the agreement. *Held*, that the defendant intended to deal with the Cambria Coal Company and not with the individual trading under that name, and that consequently the contract was void on account of the defendant's mistake as to the identity of the person with whom the contract was made.

Appeal from the Baltimore City Conrt (WRIGHT, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

. *William Colton* and *Martin Lehmayer*, for the appellant.

*John Prentiss Poe* and *Edgar Allan Poe* (with whom was *Joseph R. Gunther*, on the brief), for the appellee.

PAGE, J., delivered the opinion of the Court.

This suit was brought to recover damages for the alleged failure and neglect of the appellee to ship and deliver to the appellant certain coal, alleged to have been sold by the latter to the former, by special contract in writing dated the 5th day of May, 1902.

The Court by its instruction took the case from the jury, and the judgment being for the appellee this appeal was taken.

The *narr.* alleges, that on the 5th of May, the appellant by his general agent, Dietrich, "entered into a written contract with the said appellee, by Rogers, Holloway & Co., agents of the appellees duly authorized by them to execute said contract in its behalf." The written contract is then set out: And it is further alleged, that the appellee refused to make any shipments of coal under the contract, &c., by reason whereof the appellant sustained great loss and damage, &c. The appellee pleaded, that it was never indebted and never promised as alleged; and for a third plea, that the alleged contract was procured by the fraud of the appellant.

At the trial the appellant contended that the contract having been set forth *verbatim* in the declaration, and not having been denied by the appellee in its next succeeding pleading, it must be taken as admitted for the purposes of this action as well as the agency of Rogers, Holloway & Co. Such a construction however is broader than that warranted by the terms of the statute which are, "Whenever the partnership of any parties, or the incorporation of any alleged corporation, or the execution of any written instrument filed in the cause is alleged

in the pleadings in any action or matter of law, the same shall be taken as admitted for the purpose of said action or matter, unless the same shall be denied by the next succeeding pleading of the opposite party or parties." Code, Art. 75, sec. 23, subsec. 108. The words "the same shall be taken as admitted for the purpose of said action or matter," refer to the allegations of "partnership of any parties, &c., the incorporation of any alleged corporation," and "the execution of any written instrument" alleged in the pleadings. The failure to deny any of these in the next succeeding pleading, operates as an admission against the opposite party. In *Banks* v. *McCosker*, 82 Md. 525, this Court, having this section of the Code under consideration, said: "We think it very clear that the legal effect and meaning of the statute is, that the next succeeding pleading must in terms deny the signatures of the maker and payee as well, and we do not think the general issue plea is such a denial as the law contemplates. Before the passage of the Act of 1888, ch. 248," (of which the provision in the Code is a codification), under issue joined on the general issue plea, the plaintiff had the burden cast upon him to establish the due execution of the note sued upon. Such being the case, what possible purpose could the Legislature have had in the passage of the Act in question, if not to relieve the plaintiff from the burden of proving the partnership of parties, the incorporation of an alleged corporation, or the execution of any written instrument filed in the case or alleged in the pleadings." The failure of the appellee to make denial of the execution of the contract as set out in the declaration, had the effect only of relieving the appellant of proving it, but it did not admit that Rogers, Holloway & Co. were the agents of the appellants with authority to bind them as charged in the *narr.* That was put in issue by the pleas, and was open for proof as any other fact that had been alleged.

It was also contended that the third plea, to the effect that the contract was obtained by fraud, being a plea of confession and avoidance, admits all the facts upon which the making of the contract must depend, and therefore estops the defendant

from thereafter denying them.    This plea by implication it is true · does admit the contract, but solely for the purpose of alleging the special defense, viz., that the alleged contract was obtained by fraud.    But it does not refer to the matters set up by the other pleas, and cannot be taken advantage of to prove or disprove the issue presented in his other pleas.    In the case of *Kirk* v. *Nowill,* 1 Term R. 115, where this was attempted, BULLER, J., said: "There never was such an idea before, that one plea might be supported by what is contained in another.    Each plea must stand or fall by itself; they are as unconnected as if they were on separate records."    And in *Harrington* v. *Macmorris,* 5 Taunton, 228, it was held "that the defendant's language in one plea cannot be used to disprove another plea, as in the familiar instance, I have given of.trespass, and not guilty and a justification pleaded, where the justification would certainly, if admissible, prove the act."    See 16 *Enc. Pl. & Prac.,* p. 562, note 1, where many American cases to the same effect are ctied.

The main question before the trial Court was, whether there was evidence from which the jury could find that Rogers, Holloway & Co. were the agents of the appellee and authorized to bind it in the contract set out in the *narr.*    The character of the evidence upon which the appellant relies for this, was for the most part circumstantial, consisting of implications properly inferable as he claims from his dealings with Rogers, Holloway & Co., and from the acts and declarations of the president of the company.    It is not contended that the appellant or his general manager prior to or on the 5th of May, the time of the making of the contract, had any reason to believe from the ordinary course of business of the appellee that Rogers & Holloway, were in fact the agent of the latter or had been held out to them as such, except as hereinafter will be stated.    Both Fifer and Dietrich admit that up to that time, they did not know Rogers and had no knowledge of the Clearfield Company.    So that the question is reduced to the following inquiries: 1st. Were Rogers, Holloway & Co. in fact, the agents of the appellees authorized to sell its coal on the

5th of May, and 2nd, was the appellant at that time warranted in so regarding them either by their conduct in the making of the contract, by the acts and declarations of Tome, its president, or by any other fact or circumstance.

The declarations of Rogers, Holloway & Co. made during the transaction either verbally or in writing, are not sufficient of themselves to prove the agency. If agency was once established, however, such statements might be given in evidence as a part of the *res gestæ.* In *Rosenstock* v. *Tormey*, 32 Md. 182, this Court said, "the declarations of an agent are not admissible to bind his principal under any circumstances, until the agency is first *clearly* established." This authority or agency need not be proved by writing; it may be inferred from facts and circumstances from the permission and acceptance of his service, and subsequent adoption and ratification of his acts will suffice. But before his admissions, declarations or acts are admitted, we think the Court should have required the production of some proof tending to show the existence of such agency or authority."

It seems to be clear, therefore, that neither the contract, nor the letters of Rogers, Holloway & Co., nor their declarations or their acts in making the contract, are admissible to bind the appellant until some proof *aliunde* has been offered tending to prove the existence of the agency.

There is here no proof of an express authority; on the contrary Mr. Tome, the president of the appellee, in November, 1902, stated to Mr. Fifer, "if Rogers, Holloway & Co. made that contract, the Clearfield Company was not liable." This was a repudiation of the contract and whatever may be the effect of it, it is far short of proving the agency. Nor does the letter of Tome, the president, to D. L. Hutchinson, taken by itself prove the agency. One Wm. Bryant up to the 1st of April, 1902, had been the agent for the sale of the Clearfield Company's coal, and a certain Hutchinson was his manager. As such he handled the Clearfield Company's coal by a special arrangement made with Mr. Tome. In the latter part of March, 1902, in a conversation with Mr. Tome, he

stated that Rogers & Co. would have the exclusive handling of this coal, or as it appears by Tomes's letter to him dated 20th of March, 1902, that they would have the exclusive handling of the coal, "beginning 1st of April, *proximo.*" The witness however never had any dealings with Rogers, Holloway & Co. after April 1st, 1902, and testifies to no fact tending to show that he had knowledge whether they did in fact assume such agency.

J. R. Fleming testified that he was superintendent of the appellees up to September, 1902. That prior to April, 1902, Bryant was the agent, and that he was succeeded by Rogers, Holloway & Co., who "when they became agents," "sent orders for coal" and no one else sent any, and the coal was shipped. It was contended that this is little more than a statement, that in 1902 Bryant was succeeded in the agency by Rogers, Holloway & Co., and after the latter became agents they "sent orders for coal, which were shipped to their consignees." It appears that up to April, 1902, one Wm. Bryant was the agent of the appellee "to handle its coal from year to year;" that such arrangement was terminated by the letter of Mr. Tome dated the 20th March, in which the latter said, "that Messrs. Rogers, Holloway & Co. will handle our coal beginning April 1st, *proximo;*" also that in conversation Mr. Tome said, "it was advantageous to have Rogers, Holloway & Co. handle their coal, and suggested that witness take up and do business through them, which I said wouldn't be satisfactory to me." And further, "that Mr. Tome said that Rogers, Holloway & Co. would have the exclusive handling of their coal, and any business I had for them in the future would have to be through them." There was also evidence that after the first of May, Rogers, Holloway & Co. "sent orders for coal," which was shipped to their consignees and nobody else sent in orders but them. This testimony when taken together was sufficient to go to the jury, as tending to show the agency, and to let in the evidence that was ruled out by the Court as set forth in the fourteen exceptions of the appellant.

There is another point presented by the record.   The testimony shows that the contract entered into by the appellee was with the Cambria Coal Co., which so far as the record discloses was a fiction, not representing any corporation or association.   It is clear from all the evidence that the appellee and its agents, during the whole time the negotiation for the sale of the coal was going on, thought they were dealing with a corporation.   Three days after the signing of the contract, Rogers, Holloway & Co. on behalf of the Clearfield Co. wrote to the Cambria Coal Co. asking it, "where the company is incorporated; a list of officers and directors and the amount of capital paid in."   On the 9th Dietrich replies, "beg to say that we are not incorporated, &c."   On the 17th the Clearfield Company further wrote to Dietrich, "when you called on us to make a purchase of coal for future shipment, we understood from your statement to us that the Cambria Coal Co. was a regularly incorporated company with a paid in capital.   Your information later that you are not incorporated and our investigations, compel us to notify you that we cannot confirm a contract or extend credit to a company without capital or without legal *status.*"   The reply, signed the Cambria Coal Co., assures the appellee of its good faith.   On May 21st the appellees again wrote, "we feel you should have informed us that your company was not incorporated, and failing to give us this information we took it for granted that same was incorporated and therefore liable for debts."

It is therefore clear that the appellee supposed it was dealing with a corporation and not with an individual; and furthermore the evidence will show that this belief on its part was induced by the conduct of Dietrich, the agent of the appellant. The law applicable to such a state of facts, is thus stated in *Anson on Contracts*, p. 163, 8 ed.   Mistakes as to the identity of the person with whom the contract is made, "arise where A contracts with X, believing him to be M; that is, where the offerer has in contemplation a definite person with whom he intends to contract."   The author cites in support of this position, the cases of *Boulton* v. *Jones*, 2 H. & N. 564; *Cundy* v. *Lindsay*,

2 App. Cases, 459. In the latter case where "a person named Blenkarn imitated the signature of a respectable firm named Blenkiron, induced AB to supply him with goods which he afterwards sold to X. It was held an innocent purchaser could acquire no right to the goods, because as between AB and Blenkarn there was no contract." Of him said LORD CAIRNS, "they knew nothing, and of him they never thought. With him they never intended to deal. Their minds never for an instant of time rested upon him, and as between him and them there was no consensus of mind which could lead to any agreement or contract whatever." *Roof* v. *Morrison, Plummer & Co.*, 37 Ill. App. 41. The author in a note adds, these cases must be distinguished from those where B deals with A, supposing A to be acting for himself, when in fact A is acting for an undisclosed principal X.

Applying these principles to the undisputed evidence in the case, it seems that the appellee was led to suppose that it was dealing with a corporation, with "paid up capital" and "a legal *status*." It did not intend to contract with an individaal, and was mislead by Dietrich in so doing. There was therefore no valid contract between the appellee and the appellant, and the latter cannot maintain this suit.

Notwithstanding the errors pointed out in the rulings and instruction of the Court, the judgment must be affirmed.

*Judgment affirmed.*

(Decided January 11th, 1906.)