## THE CITIZENS MUTUAL FIRE INSURANCE COM-PANY OF CECIL COUNTY *vs.* THE CONO-WINGO BRIDGE COMPANY.

*Equitable defences. Fire insurance policies: prepared by the company; mistakes; when no defence; evidence, when inadmissible. Proof of loss; waiver. Knowledge of company; notice to president. Counsel: duty in addressing jury. Letters: testimony of writer.*

An appeal from a judgment in favor of the plaintiff in a suit on a policy against an insurance company reversed the judgment on questions not affecting the merits of the claim, and the cause was remanded for a new trial; at the second trial, by a special plea, it was for the first time objected that there was a mistake in the form of the policy, alleged to have been recently discovered; the plea was demurred to, and on an appeal from the order of the Court sustaining the demurrer, it was *held,* that under the facts of the case the plea presented no equitable defence and the action of the Court upon the demurrer was proper.                           p. 435

The plea was also defective in that it did not show that the defendant, in the proper conduct of its business, could not have discovered the mistake before the loss occurred, and before the first trial of the case.                           p. 434

Unless an equitable plea presents a case that would entitle the pleader to relief in equity, it is bad as an equitable defence in a court of law.                           p. 434

To correct a mistake and reform a contract, application must be made without unreasonable delay, and the time in which relief should be sought begins to run from the time the mistake was discovered, or, by the use of reasonable diligence, could have been discovered.                           p. 434

In a suit on a fire insurance policy, where under the pleadings the execution of the policy is admitted, evidence of a mistake in the policy is not admissible for the purpose of showing that the policy had not been executed by the defendant; nor can evidence be introduced for the purpose of contradicting or varying its terms by showing that the parties intended the policy to cover a different property from that described in the policy.                                  p. 435

Where an insurance policy is prepared, executed and delivered by the insurer or its agent, and accepted by the insured, mistakes in the policy are the fault of the insurer or its agent, and can not be set up as a defence to an action thereon.
p. 436

Where, by the pleadings in the case, execution of an insurance policy is admitted, the defendant company can not, under the general issue plea, introduce evidence that a provision attached to the policy was not affixed by it.            p. 436

In an action on an insurance policy evidence of whether the company ever waived the proof of loss in other cases is immaterial and properly excluded.                          p. 437

Where a letter and the one to which it was a reply are in evidence, the writer of the letter can not be examined as to what he referred to in it; the letter must speak for itself.
p. 437

A party can not be held to have waived an objection of forfeiture of which he has no knowledge; but actual knowledge is not always necessary.                                 p. 438

If an insurance company, with full knowledge of a forfeiture, recognizes the validity of the policy, or leads the assured to reasonably believe that it does not intend to rely upon the forfeiture, it can not afterwards be allowed to say it did not intend to waive it.                                      p. 439

Where a fire insurance company has knowledge that proof of loss has not been furnished within the time specified by the policy, the president of the company will be charged with having had the same knowledge.                        p. 438

It is the duty of counsel in their argument before the jury to keep within the record and the instructions of the Court, but such matters must be left largely to the discretion of the trial judge. p. 440

A bill of exceptions that includes several exceptions will not be considered by the Court of Appeals. p. 439

*Decided November 17th, 1911.*

Appeal from the Court of Common Pleas of Baltimore City (ELLIOTT, J.).

The following are the rejected prayers of the defendant ordered by the Court to be inserted in the report of the case:

*Defendant's 1st Prayer.*—At the request of the defendant, the Court instructs the jury that under the uncontradicted evidence in this case, and under the pleadings, there is no evidence legally sufficient to entitle the plaintiff to recover, and the verdict must, therefore, be for the defendant (*Refused*).

*Defendant's 3rd Prayer.*—At the request of the defendant, the Court instructs the jury that by the uncontradicted evidence in the case, the plaintiff failed to furnish proofs of loss within thirty days as required by the policy, and, therefore, their verdict must be for the defendant; unless the jury find that the defendant has waived the failure to file proofs of loss within the time required, and the jury are further instructed they are not at liberty to find that the defendant did waive said breach of the conditions of the policy, unless they find that there was an intentional abandonment of said breach by some authorized agent of the defendant company having knowledge of the forfeiture (*Refused*).

*Defendant's 4th Prayer.*—At the request of the defendant, the Court instructs the jury that it appears from the uncontradicted evidence in this case that at the time that the witness, William T. Warburton, wrote the letter of October 26, 1907, to Thomas H. Robinson, the said Warburton did not

know that the proofs of loss required to be furnished by the insured under the policy sued on had not been furnished within thirty days as required by the policy; and there being no evidence in this case legally sufficient to show any waiver by the defendant of the failure to furnish said proofs of loss other than said letter of October 27, 1907; therefore, their verdict must be for the defendant (*Refused*).

*Defendant's 5th Prayer.*—At the request of the defendant, the Court instructs the jury that by the uncontradicted evidence the witness, William T. Warburton, had no express or implied authority to bind the defendant by waiving the failure to file proofs of loss within the time required by the policy; and as all the acts alleged by the plaintiff to constitute evidence of a waiver occurred after the forfeiture of the policy by reason of the failure to file proofs of loss within thirty days after the fire, the plaintiff is not entitled to rely upon any apparent authority of the said Warburton to waive said proofs of loss, there being no evidence in the case legally sufficient to show that the plaintiff was in any way misled to its prejudice by said alleged waiver by the said Warburton, and their verdict must, therefore, be for the defendant (*Refused*).

*Defendant's 6th Prayer.*—At the request of the defendant, the Court instructs the jury that a waiver by the defendant of the forfeiture of the policy by reason of the failure to file proofs of loss within thirty days, means an intentional abandonment by the defendant of a known right; that there is no evidence in this case to show that at the time the said William T. Warburton wrote the letter of October 26, 1907, he either knew of the forfeiture of the policy then existing, or intended to waive it, and, therefore, their verdict must be for the defendant, there being no evidence in this case other than the said letter legally sufficient to show any waiver by the defendant (*Refused*).

*Defendant's 7th Prayer.*—At the request of the defendant, the Court instructs the jury that if they find that the wit-

ness, William T. Warburton, president of the defendant company, had no actual authority from it to waive the plaintiff's failure to file proofs of loss within thirty days, as required by the policy, and further find that the plaintiff was in no way misled to its prejudice by the correspondence between Thomas H. Robinson and William T. Warburton offered in evidence in this case, then there is no evidence in this case legally sufficient to show any waiver by the defendant of the plaintiff's failure to file proofs of loss as required by the policy (*Refused*).

*Defendant's 8th Prayer.*—At the request of the defendant the Court instructs the jury that if they find that the proofs of loss were received by the defendant's secretary, Charles E. Warburton, on August 6th, 1907, and that thereupon the secretary called to the attention of the directors of the company the fact that the policy requirements as to furnishing proofs of loss thirty days after the fire had not been complied with, and was instructed by said directors not to waive said forfeiture, but that the company would insist thereon, and at the time of writing the letter of October —, 1907, the President of the company, William T. Warburton, had no actual authority from the company to waive failure to file the proofs within the time required, and did not know at the time of writing said letter of said forfeiture and did not learn thereof until on January 3rd, 1908, when he wrote the letter of that date offered in evidence; then there is no evidence in the case legally sufficient to show any waiver by the defendant of the failure of the plaintiff to file proofs of loss as required within the time required by the policy and their verdict must be for the defendant (*Refused*).

*Defendant's 9th Prayer.*—At the request of the defendant, the Court instructs the jury that by the true construction of the contract between the parties, it consisted not only of the policy 1392 offered in evidence, but also of the application No. 1376 therein referred to, and the by-laws of the defendant company also admitted in evidence, and that by

the true construction of said whole contract it appears that the plaintiff intended to obtain insurance on the short bridge only, which by the uncontradicted evidence was not destroyed by the fire, and there being no evidence in this case legally sufficient to show that the different description of the property on the policy form was requested or authorized by the plaintiff, the verdict must be for the defendant (*Refused*).

*Defendant's 10th Prayer.*—At the request of the defendant, the Court instructs the jury that by the true construction of the insurance policy referred to in the declaration and offered in evidence by the plaintiff, numbered 1392, the insurance contract therein contained consisted not only of said policy 1392, but also of the application in writing, No. 1376, therein referred to, and also the by-laws of the defendant company; and that it appears from said whole contract the minds of the parties never met on the identity of the property to be insured, and the plaintiff, therefore, is not entitled to recover in a suit at law on said contract; and the verdict must, therefore, be for the defendant. (*Refused.*)

*Defendant's 11th Prayer.*—At the request of the defendant, the Court instructs the jury that if it finds that the type-written clause pasted on the policy reading "Other insurance permitted without notice until required" was not placed thereon by the defendant, or by any agent or employee thereof, then their verdict must be for the defendant, the evidence being uncontradicted that there was other insurance on the main bridge at the time of the issuance of said policy sued on, and said policy distinctly providing that it should be void in case of other insurance on the property. (*Refused.*)

*Defendant's 12th Prayer.*—At the request of the defendant, the Court instructs the jury that by the uncontradicted evidence the policy 1392 offered in evidence was first issued without any permission for other insurance endorsed thereon; that there is no evidence in this case legally sufficient to show that the phrase "Other insurance permitted without notice until required" typewritten on the policy by a separate sheet

annexed thereto, was ever placed thereon by the authority of the defendant company; that by the uncontradicted evidence there was other insurance on the property destroyed by fire; that the policy 1392 distinctly provided that it should be void in case of other insurance, and, therefore, their verdict must be for the defendant. (*Refused.*)

*Defendant's 28th Exception.*—After the matters and things set forth in the aforegoing bills of exceptions, which are hereby made a part hereof as fully as if herein again repeated, counsel proceeded to argue the case before the jury, and in the closing argument for the plaintiff made by Mr. Shirley Carter, the latter announced the proposition that when a man had a sale to advertise he printed it in such type as people would be likely to see, and he didn't print the notice in small diamond type and put it up on the premises, and that it was not fair to sneak into a contract a provision requiring proofs in thirty days in small diamond type, to which counsel for the defendant objected, and asked the Court to rule that it was improper argument in this case before the jury. But the Court refused so to rule and stated:

"The Court allows full latitude to counsel in argument before the jury and unless there is a deliberate misrepresentation of some of the facts in the case, does not feel called upon to interfere."

The cause was argued before Boyd, C. J., Briscoe, Pearce, Thomas, Pattison, Urner and Stockbridge, JJ.

*W. Calvin Chesnut* (with whom were *Enos S. Stockbridge* and *Gans & Haman,* on the brief), for the appellant.

*Thomas H. Robinson* and *Shirley Carter* (with whom were *Bernard Carter & Sons,* on the brief), for the appellee.

Thomas, J., delivered the opinion of the Court.

This is the second appeal in this case. The suit is on a fire insurance policy for three thousand dollars, and the

property described in the policy is "that part of main Cono-
wingo Bridge across the Susquehanna River located in Cecil
county."

It appears from the record in this case, as it did on the
former appeal, that the Conowingo Bridge extended from
Harford county across the Susquehanna River to Cecil
county, and consisted of what was called the *main bridge,*
which was 1,328 feet long and extended from the Harford
county side of the river to a causeway, about 100 feet long,
constructed on an island, and another bridge called the *short
bridge,* which was 500 feet long and extended from the other
end of said causeway to the Cecil county shore.   799 feet of
the main bridge was in Harford county, and the remaining
529 feet of the main bridge and the short bridge were in
Cecil county.

The main bridge was totally destroyed by fire on the 5th
of June, 1907, and on the 8th of June the secretary of the
appellee, the Conowingo Bridge Company, wrote to the secre-
tary of the appellant, the Citizens' Mutual Fire Insuance
Company, notifying him that "the main structure of the
Conowingo Bridge located in Cecil and Harford Counties"
had been entirely consumed by fire, and that the loss was
only partially covered by the insurance set out in the letter,
amounting to $21,000.00, including the policy sued on.   No
reply to said notice was received by the appellee.   On the
30th of July, 1907, Thomas H. Robinson, Esq., in whose
hands the appellee had placed all of the policies for collec-
tion, wrote the president of the appellant, W. T. Warburton,
Esq., stating that the several stock companies interested in
said loss desired "to arbitrate the question of the value of
the bridge," and asking Mr. Warburton to advise him
"whether or not," his company desired to participate in the
arbitration, but there does not appear that there was any
reply to that letter.   Proof of loss was mailed to the appellant
on the 5th of August, 1907, and received by it on the 6th of
August, and on the 14th of October, 1907, Mr. Robinson
wrote to the president of the appellant again, as follows:

"My Dear Sir: The directors of the Conowingo Bridge Co. requested me to ask you when the can expect an adjustment of the insurance amounting to $3,000.00 in your company on the bridge that was recently destroyed by fire. Kindly let me hear from you and oblige, Very truly yours," etc. To this letter the president of the appellant, on the 26th of October, 1907, replied: "My Dear Sir: Your letter of the 14th inst., in reference to the insurance on Conowingo Bridge, was duly received at my office. I have been almost constantly away from home, and I will not be able to take this matter up with you until after the election, at that time I will write you fully upon the subject. Yours truly," etc. On the 2nd of January, 1908, Mr. Robinson wrote the president of the appellant stating that he had forgotten until again reminded by the directors of the Bridge Company to take up with him the matter of the adjustment of the insurance in his company, and asking him when he could expect a settlement, and in reply the president of the appellant wrote him, January 3rd, 1908, as follows: "Your letter has just been received in regard to the claim of the Conowingo Bridge Company for insurance. There is no proof of loss submitted by the company according to the terms of its policy, and the directors have nothing to act upon." etc. Mr. Robinson immediately replied to this letter, expressing surprise that the appellant should take such a position, and stating that if the appellant intended to stand upon such a technical point it should have notified him before, as he "had relied upon the matter being adjusted without difficulty," and that he was the cause of any delay in furnishing proof of loss.

The appellant having refused to pay the insurance, suit was brought and the case was finally moved to the Court of Common Pleas of Baltimore City where the first trial resulted in a verdict for the plaintiff, appellee, for the amount of the policy and interest. On appeal this Court sustained the rulings of the Court below on the pleadings, and held that there was no error in its rulings admitting in evidence the policy sued on, proof of loss and the letters to

which we have just referred, or in the granting of plaintiff's first and third prayers and the rejection of defendant's prayers, but because of the error in the granting of plaintiff's second prayer the judgment was reversed and the case was remanded for a new trial.

At the second trial the defendant, on the 7th of February, 1911, filed its tenth plea for defence upon equitable grounds, to which the plaintiff demurred and the demurrer was sustained. During the trial the defendant reserved twenty-eight exceptions, the first twenty-six of which were to the rulings of the Court below on the evidence; the twenty-seventh to the granting of the plaintiff's three prayers and the rejection of the first, third, fifth, sixth, seventh, eighth, ninth, tenth, eleventh and twelfth prayers of the defendant, and the twenty-eighth is to the refusal of the Court below to rule that a certain part of the argument of counsel for the plaintiff before the jury was improper. The verdict and judgment being for the plaintiff, the defendant has again appealed.

Defendant's tenth plea alleges that the defendant was a mutual company, and that under its by-laws policies could only be issued upon applications in writing, on forms provided by the company, containing a description of the property. That on the 10th of February, 1907, the plaintiff, by its president, C. C. Caldwell, applied in writing, on an authorized form, "for insurance on the following described property:

$3,000 on their single track, wooden bridge about 500 feet long, covered with shingles, set 100 feet distant from main bridge, on the east side of the Susquehanna river, Cecil County, Maryland. Privilege to make repairs and to carry over, attach and maintain telegraph wires on said bridge. Other insurance permitted," and that said application further provided that the applicant agreed that the statements made therein were true, and that the application should "constitute a part of the policy to be issued thereon and a warranty by the insured, and that the insured" would

"accept said policy subject to the provisions of" the "charter, by-laws, rules and regulations" of the company. The plea further alleges that "said application was number '1376' and an insurance policy was issued on or about said February 10th, 1907, to run for a period of five years thereafter by the secretary of the company in exact accordance with said application. And thereafter, on or about the 28th day of March, 1907, the president of the plaintiff company called at the office of the defendant company, inquired for the secretary (who was then confined to his room with typhoid fever), and met Mr. Henry A. Warburton, an attorney-at-law having his office in the same room as that of the Fire Insurance Company, who then informed the said Caldwell that the secretary was sick and absent, and Caldwell stated that he had come to see about some insurance on the Conowingo bridge; the said Warburton replied that he could not issue insurance, but that application would have to be made to the directors, and then Caldwell stated that he did not wish a new policy, but that he had lost or mislaid a policy which had been issued and desired to obtain a copy or duplicate; and thereupon, the said Warburton, having access to the policy forms in the same room, and desiring to accommodate Mr. Caldwell, undertook to make up and issue a duplicate policy, being the paper referred to in the declaration as 'Policy No. 1392,' wherein the property was described as follows: 'To the following property herein described (and also described in application No. 1376).' But that on the typewritten form pasted on said policy so delivered by the said Warburton to the said Caldwell, by mistake, the property was described as follows: '$3,000 on the part of main Conowingo bridge, across the Susquehanna river located in Cecil County, Maryland.' And by the printed conditions of said policy so made up and delivered by the said Warburton it was further provided: 'If any application, survey, plan or description of property be referred to in this policy, it shall be a part of this contract and a warranty by the insured.' "

Said plea further alleges "that the said Henry A. Warburton was not an officer or agent of the defendant and had no authority whatever to make or change the contract of insurance existing between the parties, and intended only to deliver a copy or duplicate of the original policy stated by the said Caldwell to have been lost or mislaid, to cover the unexpired portion of the term of five years for which the policy had originally been written, the said Warburton then and there stamped the policy register of the company on the page showing its issuance with the following note 'Duplicate.'" That "at the time of issuing said writing the names of the president and secretary of the company were affixed thereto by a stamp, and were not signed by these officers; and no new application was filed by the plaintiff, or the said Caldwell for it, and no new premium was paid; and it was not the intention of the parties to make a new contract, but the description on the policy form above referred to was a mistake, which was occasioned by reason of the said Warburton's unfamiliarity with the original transaction, and the plaintiff did not intend to change the contract; and the mistake was, therefore, mutual, or the plaintiff's conduct, if said mistake was noticed by it, was inequitable in not calling the same to the attention of said Warburton." That "the said Warburton, regarding his action in the matter as a clerical one only, did not call the same to the attention of the secretary of the company, and such mistake was not discovered by any agent, officer or employee of the defendant company until on or about January 27th, 1911, when on a conference between the president of the company and its counsel preparatory to a second trial of the case, a request was made by said counsel for the application referred to in the policy sued on, and the original application, which was then and had long been on deposit in a bank in Elkton, was procured and the mistake then first discovered." That "said application was not produced at the first trial of the case and its provisions were not known at that time to the counsel that tried the case for the defendant."

In so far as the plea attempts to set up the alleged mistake in the description of the property as a defence, it is defective in that, while it charges that the mistake was not known to the defendant until about the 27th of January, 1911, it no where shows that the defendant, in the proper conduct of its business, could not have discovered the mistake before the loss occurred and before the first trial of the case. The defendant no doubt kept a record of all policies issued by it, indeed, the plea alleges that it had what was called a "policy register" and from that record, as well as from the application, which, according to the plea, contained a description of the property insured, and which are retained by the Company, the property covered by any policy could have been readily ascertained. Admitting that Henry A. Warburton did not notify the defendant of the issuing of the duplicate policy, and even if we go further than the plea requires and admit that the record of it made by him did not disclose that the policy sued on covered the main bridge, after the fire, which occurred on the 5th of June, 1907, the defendant knew the plaintiff claimed that its policy covered the property destroyed, and by reference to its papers and records would have at once discovered the alleged mistake upon which it now relies. After a delay of nearly four years with full knowledge of the alleged mistake, or what amounts to the same thing, with the means of discovery at hand, and after a loss, and after the case has been once tried, and payment has been refused and suit has been defended upon other grounds, the defendant would have no standing in a Court of equity to have the mistake corrected and the policy reformed, and unless a plea of this kind presents a case that would entitle the pleader to relief in a Court of equity it must be bad as a defence on equitable grounds in a Court of law. In order to correct a mistake and reform a contract the application to a Court of equity must be made without unreasonable delay, and the time in which relief should be sought begins to run from the time the mistake was discov-

ered or could have been discovered by the use of due diligence. *Keedy* v. *Nally,* 63 Md. 311. So apart from any other consideration the demurrer to the plea, for the reason stated, was properly sustained, and as it was decided on the former appeal, 113 Md. 430, that under the pleadings in the case, the execution of the policy sued on was admitted, the facts alleged in the plea were not admissible under the general issue plea for the purpose of showing that said policy had not been executed by the defendant, nor could they be introduced for the purpose of contradicting or varying the terms of the contract by showing that the parties intended it to cover a different property from that described in the policy. The case of *Fifer* v. *Clearfield Coal Co.,* 103 Md. 1, and *United Rys. Co.* v. *Wehr,* 103 Md. 323, cited by counsel for the appellant, do not warrant the admission of the evidence referred to in this case. In the former case, JUDGE PAGE referred to the allegations of the *narr* that the appellant "entered into a written contract with the appellee, by Rogers, Holloway & Co., agents of the appellees duly authorized by them to execute said contract in its behalf," and said: "The failure of the appellee to make denial of the execution of the contract as set out in the declaration, had the effect only of relieving the appellant of proving it, but it did not admit that Rogers, Holloway & Co. were the agents of the" appellee "with authority to bind them as charged in the *narr*. That was put in issue by the pleas, and was open for proof as any other fact that had been alleged." In the latter case, where the offer of the appellee to the appellant was to buy "all the old material which you have for sale," etc, the Court held that parol evidence was admissible to show what material was referred to. Here the evidence rejected was offered either for the purpose of showing that the policy sued on had not been executed, or for the purpose of contracting the plain and unambiguous terms of the contract by showing that the defendant did not intend to insure the property described in the policy. What we have just said disposes of the seventh,

eighth, ninth, tenth, nineteenth, twentieth, twenty-second and twenty-third exceptions.

The appellant was not injured by the refusal of the Court below to allow it to introduce application "No. 1376" in evidence, and there was, therefore, no reversible error in the ruling in the twenty-first exception. The only purpose for which it was offered was to show that the description of the property in the policy was the result of a mistake, and that the policy was intended to cover the property described in the application. The policy contains an accurate description of the property destroyed by the fire, and a statement that the property is also described in "Application No. 1376." While the application was made, in one sense, a part of the contract, the policy was prepared, executed and delivered by the appellant and accepted by the appellee, and if there is a mistake in the policy it was the fault of the appellant, and cannot, under the circumstances disclosed by the record, be set up as a defence to this suit. It was said in *Planters' Mut. Ins. Co.* v. *Deford,* 38 Md. 382. that it has been held in many well considered cases that "whenever the breach of warranty or representation can be fairly attributed to the fault of the agent of the company, the latter will not be allowed to set up such breach as a defence to an action on the policy." See also *Md. Fire Ins. Co.* v. *Gusdorf,* 43 Md. 513, 514, and *Monahan* v. *Mutual, Ins. Co.,* 103 Md. 145.

The first, fourth, fifth, sixth, eleventh and twelfth exceptions, and exception 1A relate to the rulings of the Court below admitting in evidence the policy sued on, the letters to which we have referred and the proof of loss, and to the refusal of said Court to allow the defendant to prove by the president of the appellant that he was not authorized to waive the failure of the plaintiff to furnish proof of loss within the time provided by the policy and were disposed of on the former appeal. Moreover, the Court below, by the plaintiff's first prayer, instructed the jury that they were not to consider the statements contained in the proof of loss as evidence "of the fact or extent of the plaintiff's loss," etc., hence,

the appellant was not injured by the admission of the proof of loss.

We see no objection to the evidence referred to in the second exception. It was necessary to prove the amount of insurance on the property in order to show the extent of the appellant's liability under the terms of the policy.

The third exception is to the refusal of the Court below to allow the witness to state his belief as to the cause of the fire, and the fourteenth exception is to its refusal to allow the president of the appellant to state why he was not able to take up the matter referred to in his letter until after the election. This evidence was immaterial and was properly rejected.

The president having been asked if it was the custom of mutual companies not to insist upon compliance with the provision in regard to the time of filing proof of loss, and having stated that he could only "speak in reference" to his own company, was asked if his company had ever waived the failure to file proof of loss within the time required by the policy, and if he had ever waived the failure to furnish the proof of loss within the required time, and the seventeenth and eighteenth exceptions are to the refusal of the lower Court to permit these questions to be asked. What the company or the witness did or did not do in other cases was immaterial, and the evidence offered was properly excluded.

The fifteenth exception is to the refusal of the lower Court to allow the president of the appellant to state what matter he referred to in his letter to Mr. Robinson, and there was no error in the refusal of that Court to allow the question to be answered. The letter, when read in connection with the letter to which it was a reply, and which was in evidence, speaks for itself.

The thirteenth and sixteenth exceptions are to the refusal of the Court below to permit the president of the defendant to testify that he did not know at the time he wrote the letter of October 26th that proof of loss had not been furnished

within the time specified, that he did not learn of it until January 3rd, 1908, and that "he did not intend in writing" said letter to waive the failure of the plaintiff to comply with said provision of the policy. On the first appeal (113 Md. 444), JUDGE BRISCOE, speaking of the letters to which we have already referred, said: "Upon the proof set out in these letters and the other evidence in the case, we think there was ample evidence to constitute a waiver." While it may be admitted that a party can not be said to have waived an objection or forfeiture of which he had no knowledge, actual knowledge of the forfeiture is not always necessary.

In this case the appellant knew that the proof of loss had not been furnished within the thirty days specified in the policy, and its president, while acting for the company, must be charged with the same knowledge. If the appellant, after it received the proof of loss, had, through its president, offered to settle the insurance, it would not for a moment be contended that it would escape the consequence of its conduct by showing that its president did not know of the forfeiture. In the case of *Knights of Pythias* v. *Kalinski,* 163 U. S. 289, MR. JUSTICE BROWN said: "Granting that the continued receipt of premiums or assessments after a forfeiture has occurred will only be construed as a waiver when the facts constituting a forfeiture are known to the company, *Insurance Co.* v. *Wolff,* 95 U. S. 326; *Bennecke* v. *Insurance Co.,* 105 U. S. 355, this is true only of such facts as are peculiarly within the knowledge of the insured. If the company ought to have known of the facts, or with proper attention to its business, would have been apprised of them, it has no right to set up its ignorance as an excuse." The same principle was announced and applied in the case of *Monahan* v. *Mut. Ins. Co., supra,* where CHIEF JUDGE MCSHERRY, after quoting from the *Kalinski case,* says: "It can not be doubted that the company ought to have known the names of the persons upon whose lives it carried risks; and it is obvious that a proper attention to its business would have apprised its officers of those names, and consequently it has no right

to set up its voluntary and censurable ignorance of those names as an excuse for not knowing that a prior policy had been issued by it on the life of Mary J. Marion." Nor can the appellant change the result of the conduct of its president by evidence of his secret intention. In 4 *Wigmore on Evidence,* p. 3391, the learned author cites the case of *Indianapolis* v. *Kingsbury,* 101 Ind. 201, 213, in which the Court said: "We fully agree with counsel for the appellees that an essential element of dedication is the intent of the owner to devote his land to a public purpose, and we unhesitatingly affirm that without such an intention it is impossible that there should be a valid dedication. But the intention to which courts give heed is not an intention hidden in the mind of the landowner, but an intention manifested by his acts. It is the intention which finds expression in conduct, and not that which is secreted in the heart of the owner, that the law regards." If an insurance company, with full knowledge of the forfeiture of a policy, recognizes the validity of the policy, or so acts as to lead the insured to reasonably believe that it does not intend to rely upon the forfeiture, it can not afterwards say that it did not intend to waive the forfeiture. *Rokes* v. *Amazon Ins. Co.,* 51 Md. 512; *Lineweaver* v. *Slagle,* 64 Md. 465; *Jarrell* v. *Young,* 105 Md. 280; *Titus* v. *Glens Falls Ins. Co.,* 81 N. Y. 410; *Replogle* v. *American Ins. Co.,* 31 N. E. R. 947; *Insurance Co.* v. *Norton,* 96 U. S. 234.

The twenty-fourth exception is to the refusal of the Court below to allow the secretary of the appellant to answer the question, "to whose attention did you bring the subject?" (proof of loss), and is disposed of by what we have said in regard to the thirteenth and sixteenth exceptions.

The twenty-fifth and twenty-sixth bills of exceptions include several exceptions in each bill of exception, and the exceptions will not, therefore, be considered by this Court. *Tall* v. *Steam Packet Co.,* 90 Md. 248; *Junkins* v. *Sullivan,* 110 Md. 539.

We do not find in the twenty-eight exceptions any ground for the reversal of the judgment in this case. In the case of *Esterline* v. *State,* 105 Md., this Court, on page 638, adopts the statement of MR. JUSTICE BROWN, in *Dunlop* v. *The United States,* 165 U. S. 486, "If every remark made by counsel outside of the testimony was ground for reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by the temptation." It is of course the duty of counsel in their argument before the jury to keep within the record and the instructions of the Court, but such matters must be left largely to the discretion of the trial judge. *B. & O. R. R. Co.* v. *Boyd,* 67 Md. 32. The argument objected to is the statement to the jury "that it was not fair to sneak into a contract a provision requiring proofs in thirty days in small diamond type." By the granted instructions the jury were required to find a waiver of the failure to furnish proof of loss within the thirty days mentioned in the policy before the plaintiff could recover, and with that instruction and with the policy before them we do not see how they could have been misled by the argument complained of, even if it be conceded that counsel ventured beyond the proper limits, which, however, we do not decide.

This brings us to the rulings of the Court below on the prayers. Plaintiff's first and second prayers were approved by this Court on the first appeal, and the appellant has abandoned its exception to the third prayer. The Reporter is requested to set out the rejected prayers of the defendant. Defendant's first, third, fifth, sixth, sventh, eighth, ninth and tenth prayers are disposed of by what we have said in regard to the rulings of the Court below on the evidence. The defendant's eighth, ninth and tenth prayers are also objectionable because they are based upon evidence which was excluded by the Court below. The defendant's eleventh and twelfth prayers present the proposition that the permit for other insurance pasted on the policy sued on was not attached

thereto by the appellant, and that the policy was, therefore, avoided by other insurance on the property. The answer to this contention is that the permit was attached to and was a part of the policy offered in evidence at the first trial of the case, and on the former appeal this Court held that the execution of the policy was admitted by the pleadings.

Finding no reversible error in any of the rulings of the Court below, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*