FAY v. HILL et al.

(Circuit Court of Appeals, Eighth Circuit. February 23, 1918.)

No. 4869.

1. EQUITY . &#9740;220, 362—TRIAL &#9740;11(3)—BILLS—GROUNDS FOR DEMURRER— ADEQUATE REMEDY AT LAW.

Under equity rule 22 (198 Fed. xxiv. 115 C. C. A. xxiv). the fact that there is a complete and adequate remedy at law is no ground for demurrer or motion to dismiss a bill, but the proper procedure is to move to transfer it to the law side.

2. TRIAL &#9740;11(3)—TRANSFER—WAIVER.

Failure to move to transfer a bill to the law side on the ground that there is a complete and adequate remedy at law, and proceeding to a hearing, is a waiver of the objection.

3. APPEAL AND ERROR &#9740;1046(1)—FAILURE TO TRANSFER EQUITY CASE—HARMLESS ERROR.

Where a bill to cancel a contract of a sale, on which the buyer had already begun an action, at least stated an equitable defense, it was immaterial that the bill was not transferred from the equity side, for, had it been transferred and treated as an answer to the action at law, it would have been disposed of by the court sitting as a chancellor before the trial cf the action at law to the jury.

4. TRIAL &#9740;1—EQUITABLE DEFENSE—DISPOSITION.

Where an equitable defense is interposed in an action at law, it will have to be disposed of by the court sitting as a chancellor before the trial of the action at law to the jury.

5. CANCELLATION OF INSTRUMENTS &#9740;32—JURISDICTION OF EQUITY.

A bill seeking to cancel a contract of sale on the ground that it was obtained by fraud and deception. and that the minds of the parties had never met, states a case for equitable relief.

6. APPEAL AND ERROR &#9740;1009(1, 4)—REVIEW—EQUITY CASES—FINDINGS OF FACT.

In an equity case, findings of fact of the trial judge, who heard the testimony, are entitled to high consideration, and unless clearly against the weight of the evidence, or induced by mistaken view of the law, will not be disturbed by the appellate court.

7. SALES &#9740;45—FRAUD—WHAT CONSTITUTES.

As misrepresentations may be as well by artifices to mislead or concealment as by positive assertions, an individual, who for speculative purposes attempted to buy linseed oil for future delivery over a long period of time, must be deemed guilty of fraud, warranting cancellation of the contract, where he was insolvent and transacted his business under a purported corporate name. indicating a capital and commercial rating.

8. SALES &#9740;36—MEETING OF MINDS.

Where through telegraphic correspondence an individual acting under a purported corporate name bought linseed oil in large quantities for future delivery, and the seller, though diligent in making inquiry, acted under the mistaken belief that the buyer was a corporation of resources,

---

&#9740;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

there was no meeting of the minds, and the seller, having been diligent, was entitled to rescind the contract.

9. EQUITY ☞13—GROUNDS—HARDSHIP.

When hardship amounting to injustice would be inflicted on a party by holding him to his apparent bargain, it is within the jurisdiction of equity to relieve him.

10. SALES ☞418(4)—BREACH—DAMAGES.

A purchaser of linseed oil for future delivery cannot, the seller having canceled the contract, recover damages in an action at law, where at the time of the cancellation the market price of the oil was less than the contract price.

11. EQUITY ☞39(1)—JURISDICTION—SCOPE.

A court of equity, having obtained jurisdiction of a suit wherein cancellation of contract of sale was sought, will. retain the jurisdiction to dispose of all controversies between the parties arising out of the transaction.

Sanborn, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Bill by Hugh Hill and Eugene Taylor, doing business as Edward Hill's Son & Co., against William Fay. From a decree for complainants, defendant appeals. Affirmed.

This is an appeal from a decree declaring two contracts between the parties to this action void, and enjoining the prosecution of an action at law based upon these contracts. The facts, briefly stated, are that the appellant was a civil engineer, residing in the city of St. Louis, without any commercial rating, and without any means, except a homestead, which was subject to a mortgage for nearly its full value; that in May, 1910, one Eberson, a manufacturer of paints, decided to enter the business of manufacturing linoleum, using a pigment, which he supposed would enable him to manufacture it successfully. He adopted the name of "Western Linoleum Manufacturing Company," intending to incorporate it thereafter; but which was never done. Appellant, a civil engineer, was to superintend the erection of the plant, for which he was to receive 10 per cent. of the total cost as compensation. He was not to receive any salary, nor any of the profits made in the operation of the plant, when operated. The plant was never erected; Eberson abandoning the enterprise. The appellant rented an office, placing on it a sign, bearing the name suggested by Eberson, "Western Linoleum Manufacturing Company." During the months of May, June, and August, 1910, he purchased some linseed oil, to be paid for in cash upon delivery, all of which, except one carload, was purchased and paid for by Eberson. In September, 1910, Eberson had given up the idea of building a linoleum plant, as he found the pigment which he had invented was not a success. No contracts for the purchase of linseed oil were made thereafter by appellant, except those in controversy. The Western Linoleum Manufacturing Company kept no bank account, its name was not listed in the telephone or city directories, and with the exception of one carload the purchases, as hereinbefore stated, were bought for and sold to Eberson, who borrowed the money to pay for the oil as it arrived. On November 30, 1910, he sent a telegram to appellee, a concern of means, in the oil business in the city of New York, asking for a quotation of prices on 150,000 gallons of linseed oil, equal monthly deliveries to be made from April to August, inclusive, f. o. b. cars New York, or other Atlantic ports; also St. Louis. Upon receipt of this telegram the appellees called up Mr. La Forge, of the American Linoleum Manufacturing Company, of which he was secretary and therefore acquainted with the linoleum trade of the country, for the purpose of inquiring about the standing of the Western Linoleum Manufacturing Company. Mr. La Forge informed them that he under-

stood that this was a plant which had been taken over by Cook a short time ago. Cook was the owner of the Trenton Oil Cloth & Linoleum Manufacturing Company, a very wealthy concern engaged in manufacturing linoleum. At the same time they put in an inquiry for a report on the Western Company with Dun's Commercial Agency. An effort was made by the appellees to ascertain from the Trenton Company about appellant's company, but it could not be reached. Thereupon on the same day appellees sent to the Western Linoleum Manufacturing Company the following telegram: "Eighty-four and one-half cents delivered St. Louis less one per cent. seaboard weights to govern, subject to prompt wire reply." On the same day it confirmed this telegram by letter. On the next day the appellees received a telegram from appellant, signed "Western Linoleum Mfg. Co.," accepting their offer. On December 2d appellees wrote to the Western Linoleum Manufacturing Company, acknowledging receipt of the telegram accepting their offer, and wrote as follows: "We haven't had the pleasure of doing any business with you in the past, and as this is comparatively a large order, will you kindly furnish us with references? As to our ability to carry out the contract, we refer you to [naming a number of large and responsible firms dealing in oil]." On the same day appellees received another telegram from the Western Linoleum Manufacturing Company asking for quotations on 125,000 additional gallons of linseed oil to be delivered between April and August in equal quantities monthly. On December 3d, appellees wired, quoting the same price for this last inquiry as for the previous order. The appellant wired back that the price was too high, and to wire if they can do better. On December 5th, appellees wired offering the oil "at 79¢ seaboard." This was accepted by appellant on the same day. On that day the purchasing agent of the Trenton Oil Cloth & Linoleum Manufacturing Company, the Cook concern, called appellees by telephone, asking about the Western Linoleum Manufacturing Company. When appellees informed them that they understood that was a plant which the Trenton Company had taken over, he answered that that was not so, that they only heard lately of such a company, and for the sake of their records were desirous of knowing who the company was.

Appellees, not having received any reply from the plaintiff to their letter asking for references, wired on December 8, 1910, the Western Linoleum Manufacturing Company, to telegraph when it answered that letter. On the same day they received a reply, signed "Western Linoleum Manufacturing Company," saying, "Letter mailed you yesterday." Between December 5th and December 8th appellees again undertook to get reports from the Dun Commercial Agency. On December 9, 1910, appellees received the letter which appellant had wired them as having been mailed by it on December 7th, but no mention was made of any references, nor did it ever send any references. On December 7th, appellees sent another telegram of inquiry to the Dun Commercial Agency, at St. Louis, and on December 8th, received a reply to this telegram, and also a report by mail. The report by mail was as follows: "Dec. 6, 1910. Efforts to locate the Western Linoleum Mfg. Co. have not been successful. Inquiry at 1416 Chemical Building, which is the office of Wm. Fay, who for many years has been consulting engineer, it is learned that he occasionally uses the above style. Various calls were made at his office, but were not successful in interviewing him. Inquiry in various other quarters elicits no information in regard to a business under this name in St. Louis or elsewhere. The name does not appear in the city or telephone directories, and several of those who have known Mr. Fay for years know nothing in regard to his connection with the linoleum business." The report by telegraph was as follows: "Apparently nominal style adopted by William Fay, a civil engineer, who made advantageous purchase of considerable linseed and apparently trying to negotiate arrangements to work it into linoleum. Unable to meet him, no answer to requests for statement. No financial responsibility traced to him, not known to principal linoleum jobbers." Upon receipt of these reports appellees sent appellant the following telegram: "Not hearing from you and in view of reports we get from agencies and St. Louis parties must consider sale made to you canceled." The total amount involved in these two contracts was about $225,000.

219 F.—27

Appellant instituted suit against the appellees for breach of contract on the law side of the District Court, whereupon the appellees filed their bill on the equity side of the court, praying for the cancellation of the contracts, as having been obtained by fraud and misrepresentation, and to enjoin the prosecution of the action at law. Upon the hearing, the principal witnesses testified orally. The court rendered a decree in favor of appellees, canceling the contracts, and enjoining the appellant from prosecuting any action at law or in equity, based upon these contracts. The court found that "the contract had been obtained fraudulently, and further found that on the day the plaintiffs [appellees] repudiated the contracts, the price of linseed oil had fallen, and was worth less by five or six cents per gallon than when the price was agreed on, and that, instead of being damaged by the repudiation, the defendant [appellant] was benefited, in that he could have bought the oil for a much less price, if in good faith he was seeking to buy oil at all." From this decree this appeal is being prosecuted.

S. T. G. Smith, of St. Louis, Mo. (H. L. Dyer, of St. Louis, Mo., on the brief), for appellant.

Frank H. Sullivan, of St. Louis, Mo. (Jones, Hocker, Sullivan & Angert, of St. Louis, Mo., and Frederick T. Hill, of New York City, on the brief), for appellees.

Before SANBORN and SMITH, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge (after stating the facts as above). [1, 2] It is insisted on behalf of appellant that the court, as a court of equity, was without jurisdiction, as there was a complete and adequate remedy at law, and therefore his plea to the jurisdiction should have been sustained. As the action was commenced after February 1, 1913, when the new equity rules were in force, the fact that the plaintiff had a complete and adequate remedy at law is no longer ground for demurrer or motion to dismiss. The proper procedure is to move to transfer it to the law side. Equity Rule 22 (198 Fed. xxiv, 115 C. C. A. xxiv). Failing to make such a motion, and proceeding to a hearing, was a waiver.

[3-5] But, aside from this, if there had been a transfer to the law side of the court, and the bill treated as an answer to the action at law, if it stated an equitable defense, it would have had to be disposed of by the court, sitting as a chancellor, before the trial of the action at law to a jury; and if upon such a hearing the equitable defense had been sustained there would be nothing left to try to a jury. This was decided by this court in Union Pacific R. R. v. Syas, 246 Fed. 561, —— C. C. A. ——. The facts alleged in the complaint make it clearly a case for equitable relief, as it seeks to cancel contracts alleged to have been obtained by fraud and deception, and that the minds of the parties had never met. Sharon v. Hill (C. C.) 20 Fed. 1; Sharon v. Hill (C. C.) 22 Fed. 28. The cancellation of the contracts would prevent their use in any other action instituted by appellant on these contracts.

[6] Was the decree right upon the facts? The findings of the trial judge, especially as most of the testimony was taken in open court, are entitled to high consideration, and unless clearly against the weight

of evidence, or induced by a mistaken view of the law, such findings will not be disturbed by the appellate court.

[7, 8] A careful reading of the testimony leads to the conclusion that the representations by appellant that it was a corporation, and by implication at least, with a capital and commercial rating, was such a concealment of facts as amounts to a fraud. In Smith v. Richards, 13 Pet. 26, 36, 10 L. Ed. 42, the rule laid down in Story's Equity Jurisprudence was followed:

> " 'Where the party, intentionally, or by design, misrepresents a material fact, or produces a false impression, in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him, in every such case, there is a positive fraud, in the truest sense of the terms; there is an evil act, with an evil intent; dolum malum, ad circumveniendum. And the misrepresentation may be as well by deeds or acts, as by words; by artifices to mislead, as by positive assertions.' "

The court then proceeded:

> "And even if the party innocently misrepresents a fact, by mistake, it is equally conclusive; for it operates as a surprise and imposition on the other party. Or, as Lord Thurlow expresses it, in Nevill v. Wilkinson, 'It misleads the parties contracting, on the subject of the contract.' "

Even if there was no fraudulent intent on the part of the appellant, there can be no doubt that the minds of the parties never met, as, when the appellees made the contract, they were under the impression that appellant was a corporation engaged in the manufacture of linoleum, with a capital and commercial rating. While it is the general rule that a contract may be made by correspondence or by telegraph and when the offer is made by the seller and accepted by vendee it is a valid contract, there are exceptions to this rule. When a party inquires for prices and misrepresents his financial standing, either expressly or by suppressing a material fact which, if known to the vendor, he would not have entered into the contract, in such a case a concealment of the true facts is a fraud on the vendor which entitles him to a rescission, provided he acts promptly. The evidence in this case sustains beyond question the finding of the trial judge that there was a material misrepresentation or concealment of the truth on the part of the appellant when he represented himself as the Western Linoleum Manufacturing Company. Nor can there be the least doubt that the appellees acted under this misapprehension and exercised extraordinary diligence for the purpose of ascertaining the commercial standing of the so-called Western Linoleum Manufacturing Company, and upon discovery of the true facts promptly rescinded the contract.

It must not be overlooked that these contracts of sale were not for immediate delivery, but for deliveries to be made at future times. The contracts were made in November and December, and the deliveries were to be made between April and August, in equal monthly installments. It was therefore of the utmost importance to the appellees that the vendee should be a responsible party, and financially able to accept and pay for the oil when delivered, although the price might have declined considerably in the meantime. As stated in Ar-

kansas Smelting Co. v. Belden Co., 127 U. S. 379, 388, 8 Sup. Ct. 1308, 1310 (32 L. Ed. 246), where there was a contract for future deliveries:

"During the time that must elapse between the delivery of the ore, and the ascertainment and payment of the price, the defendant had no security for its payment, except in the character and solvency of Billing and Eilers."

Had appellant made the inquiry for the price of oil in his own name, instead of in the name of a supposed corporation, which had no existence, there can be no doubt that appellees would never have entered into these contracts in the absence of references as to his financial standing. Therefore the minds of the parties have never met. A case directly in point is Fifer v. Clearfield & Cambria Coal & Coke Co., 103 Md. 1, 62 Atl. 1122. Other authorities in point are Cundy & Bevington v. Lindsay, 3 Appeal Cases, 459, 47 L. J. Q. B. 481, 38 L. T. 573, 6 Eng. Rul. Cases, 211, decided by the House of Lords; Boston Ice Co. v. Potter, 123 Mass. 283, 25 Am. Rep. 9; Rodliff v. Dallinger, 141 Mass. 1, 4 N. E. 805, 55 Am. Rep. 439.

[9] Another ground upon which relief is frequently granted by courts of equity is when a hardship amounting to an injustice would be inflicted on a party by holding him to his apparent bargain and it is unreasonable to hold him to it. Paget v. Marshall, 28 Ch. D. 255, 54 L. J. Ch. 575, 51 L. T. 351. The evidence satisfies beyond question that appellant was insolvent, having no means to respond to losses which appellees may sustain if, by reason of a fall in the price of oil, he refused to accept the oil when tendered, and that he entered into these contracts solely for speculative purposes, with neither intention nor ability to carry them out, if the price of oil should decline, when deliveries were to be made, but to take the profits arising from the transaction, if the price of oil appreciated.

[10, 11] Another ground upon which the decree must be sustained is the finding by the trial judge, warranted by the proof, that the price of oil had declined at the time of the cancellation of the contracts, and appellant could sustain no damage by the repudiation of the contract by appellees. It is true this would be a complete defense at law, but, a court of equity having obtained jurisdiction by reason of the equitable allegations, it retains it for all purposes.

The decree of the court below is right, and is affirmed.

SANBORN, Circuit Judge, dissents.